JAMES M. JAMESON, in equity, *vs.* JAMES E. EMERSON.

Penobscot. Announced February 17, 1890.

| 82 | 359 |
| 88 | 36 |
| 82 | 359 |
| 91 | 539 |
| 82 | 359 |
| 103 | 75 |

*Equitable mortgage. Appeal in equity. Decree.*

A deed absolute on its face, if intended by the parties as security for a debt, is a mortgage.

The decision of a single justice, upon matters of fact in an equity hearing, will not be reversed unless it clearly appears that the decision is erroneous. The burden to show the error lies on the appellant.

Upon a bill in equity to remove a cloud upon the plaintiff's title, the defendant claimed that he had acquired title to a parcel of the premises in dispute by disseizin, and that the injunction in the court below precluded him from setting up such claim; *Held*, that as the decree only enjoined the defendant from claiming title under a certain deed it did not have that effect; *also*, that the claim being a possessory right may be settled at law.

IN EQUITY.

On appeal by defendant from a decree in favor of plaintiff after hearing on bill, answer and proofs.

The facts are stated in the decision.

*C. A. Bailey, H. R. Chaplin,* with him, for plaintiff.

The deposition of Charles Hayward shows that no title was ever claimed by True & Hayward in the premises in controversy, and the deeds from them under which defendant claims, virtually disclaim any interest in them.

On the other hand under the Frost and St. Clair levy, made January 7, 1850, the plaintiff and his predecessors have been continuously exercising ownership.

The plaintiff contends that the deed from Ira Fish to True & Hayward although absolute in form was in fact a mortgage, (if ever delivered for any purpose), and when True & Hayward, satisfied their judgment by a levy on the Aroostook lands June 22, 1848, this mortgage title became defunct,—a mere naked trust,—and under the circumstances of this case equity presumes that a reconveyance was made to their grantor. Perry on Trusts (2 Ed.) §§ 351, 354.

At the hearing the question was mooted, whether even this presumption gave any vitality to the Frost and St. Clair levy; whether the court could go to the extent of presuming a reconveyance before the levy. Otherwise, it was contended, the levy was made upon an equitable estate, and inefficient to pass any title, (*Russell* v. *Lewis,* 2 Pick. 508) ; and if inoperative for that reason, the title remained in Ira Fish and his heirs and was conveyed by their deed to defendant Emerson.

But any possible question on this point is now set at rest by the new evidence, introduced since the appeal, by which it appears that Ira Fish years ago conveyed by deed his interest in the premises to plaintiff's predecessors in title.

By this deed any possible title remaining in Ira Fish the debtor after that levy, or acquired afterward, was released in aid of the levy title, and whether the levy was good or bad plaintiff has all the title of said Fish, and defendant none.

*C. P. Stetson, W. C. Clark*, with him, for defendant.

The testimony is not sufficient to authorize the finding that the deed of January 10, 1848, was for security, and title under it extinguished by payment of the indebtedness.

A deed absolute in form, with general warranty, will not operate as a mortgage unless it is clearly shown to have been intended as security for a loan or debt. The proof must be clear, unequivocal and convincing. *Coyle* v. *Davis*, 116 U. S. 108, 112; *Howland* v. *Blake*, 97 U. S. 624, 626; *Cadman* v. *Peter*, 118 U. S. 73, 80; *Wallace* v. *Johnstone*, 129 U. S. 58, 64.

The testimony of Ira D. Fish, "I never understood it," (the deed of his father to True & Hayward,) "as security." "My father represented it as an absolute deed," negatives plaintiff's position that the deed was for security.

Defendant as alleged in his answer and sustained by proof, has occupied and cultivated for twenty-five years some ten acres of the premises as a part of his farm and is entitled to hold same by possession. Decree does not pass upon this.

HASKELL, J. Bill in equity to remove a cloud from the title of land situated in Lincoln, Penobscot county.

The plaintiff is in possession and claims title under a levy made in 1850. The defendant under a release from True & Hayward, made in 1884, to whom the judgment debtor in the levy, under which plaintiff claims, quit-claimed by deed with special covenants of warranty, etc., in 1848.

The decree below found that if the quit-claim deed to True & Hayward was ever delivered, that it could only have been given as security for a debt that was afterwards paid. It is now contended that the finding is not supported by the evidence, and should be reversed on appeal.

Charles Hayward testifies that he and John True, under the firm of True & Hayward, did business in Bangor from 1843 to 1856, and during that time furnished Fish & Perley, lumbermen, with supplies; that Fish lived in Lincoln, and Perley in the Province; that they became embarrassed in 1847 or 1848, and were indebted to True & Hayward for supplies to the amount of $1,500 or $1,800; that the books of that firm were

destroyed by the fire of 1869, and that he testifies wholly from memory.  He says, in substance, we were informed that Fish & Perley were in a failing condition, and Fish gave us the firm note for all that was then due us, $1,600 or $1,700.  We sued this note and attached their lands in Aroostook county, and took them on execution in full satisfaction of our debt.  We never had any other claim against Fish & Perley, so far as I know.  I feel confident that we did not.  I never knew that we had dealings in lands in Lincoln, and so far as I remember, we never purchased of Fish & Perley lands in that town.  "I have no recollection of True & Hayward or either of us, or Mr. True's heirs (Mr. True being dead) owning any lands in Lincoln, from Fish & Perley after their failure."  I always had charge of the books of the firm of True & Hayward, and kept them after Mr. True moved to Portland, until they were burned in 1869.  Never, to my knowledge, did the firm of True & Hayward exercise any ownership over lands in Lincoln that were conveyed to us by Fish & Perley or either of them.

About January 1884, Mr. Sprague Adams called and informed me that True & Hayward, by reason of inaccurate surveys, held the record title to certain lands in Lincoln that rightfully belonged to Mr. Emerson, the defendant, and asked if we had any claim upon them, and I told him no.  He then asked if I would give a deed of them.  I told him yes, and volunteered to get the deeds signed by Mr. True's heirs, and did so.  I told him that I had no moral right to lands in Lincoln.  We received no consideration for the deeds.

It was proved that the plaintiffs and their grantors had held control of the lands in dispute since 1850, and treated them as their own, until this controversy arose, less than six years ago.  There was other evidence bearing upon the issue ; and we think the court below might well hold defendant's title under the deed of Fish to True & Hayward to be invalid.  There is little, beside the presumption from lapse of time, in favor of that deed.  The original has not been produced.  The only surviving grantee never knew of it, until told of its existence in 1884, and he then said that he had no moral right to any land conveyed by it, and released his interest as a matter of favor—little supposing that

he was parting with title to a very large tract of land, of great value, as a mere favor to a stranger. At any rate, the evidence does not show the decree below to have been clearly wrong and, therefore, fails to overturn it. *Young* v. *Witham,* 75 Maine, 536 ; *Paul* v. *Frye*, 80 Maine, 26.

It is contended, as the record title was not in the judgment debtor at the date of the levy, that nothing passed thereby. If this be so, the objection has been cured by deeds introduced since the appeal, showing a conveyance from the judgment debtor in aid of the levy.

It is contended that defendant has acquired title to a parcel of the premises in dispute by disseizin, and that the decree below precludes his claim. That is not the effect of the decree. Possessory rights may be settled at law. The decree only precludes him from claiming title under the deed from Fish to True & Hayward in 1848.

*Decree below affirmed with costs.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and EMERY, JJ., concurred.